**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| ALLIANCE OF AUTOMOTIVE SERVICE PROVIDERS, INC., et al., | Case No. 6:14-cv-06008-GAP-TBS (Originally filed in W.D. Pa.) |
| Plaintiffs, | MDL Docket: 6:14-cv-2557-GAP-TBS |
| v. | DISPOSITIVE MOTION |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al., | |
| Defendants. | |
| | |
| ALLIANCE OF AUTOMOTIVE SERVICE PROVIDERS, INC., et al., | Case No. 6:14-cv-06020-GAP-TBS (Originally filed in W.D. Pa.) |
| Plaintiffs, | MDL Docket: 6:14-cv-2557-GAP-TBS |
| v. | DISPOSITIVE MOTION |
| ERIE INSURANCE EXCHANGE and ERIE INSURANCE COMPANY, | |
| Defendants. | |

**JOINT MOTION OF CERTAIN DEFENDANTS TO DISMISS**
**THE AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL**
**PROCEDURE 8 AND 12(b)(6) AND SUPPORTING MEMORANDUM OF LAW**

The undersigned Defendants respectfully submit this motion to dismiss the Amended

Complaint[1] pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.

---

[1] The same set of Pennsylvania auto body repair shops filed the actions docketed in this Court as Case No. 6:14-cv-06008-GAP-TBS ("Case No. 14-6008") and Case No. 6:14-cv-06020-GAP-TBS ("Case No. 14-6020," and, together with Case No. 14-6008, the "Pennsylvania Actions"). The Pennsylvania Actions are substantively identical but for the named defendants: Case No. 14-6020 names as Defendants only Erie Insurance Exchange and Erie Insurance Company (the "Erie Defendants"), and

## PRELIMINARY STATEMENT

This Amended Complaint, brought individually by a number of auto body repair shops doing business in the state of Pennsylvania, is essentially a carbon copy of a second amended complaint brought by auto body repair shops doing business in the state of Florida that this Court recently dismissed with prejudice (the "Florida SAC").[2] *See A & E Auto Body, Inc. v. 21st Century Centennial Ins. Co.*, No. 6:14-CV-310-ORL-31TB, 2015 WL 5604786, at *12 (M.D. Fla. Sept. 23, 2015) ("Sept. 23 Order").  The gravamen and procedural history of the Amended Complaint and the Florida SAC – both brought by some of the same counsel – are virtually identical.  Both cases allege generally that defendant insurance companies engaged in anticompetitive and other unlawful conduct to artificially suppress automobile damage repair reimbursement rates in violation of federal antitrust law. Similarly, both complaints were initially dismissed with leave to amend based in part on the same pleading deficiencies, and, as shown below, the Amended Complaint should be dismissed with prejudice for the same reasons the Florida SAC was dismissed with prejudice.

As this Court recently observed, the Amended Complaint is among "the other 20–odd cases [in this MDL]…almost all of which share the same shortcomings" that led to the dismissal of the Florida SAC.  *Id*.  As in the Florida SAC, Plaintiffs here have failed to state a

---

Case No.14-6008 alleges the same facts and claims against 66 other insurance companies.  (Erie Insurance Exchange has subsequently been named as a defendant in Case No. 14-6008, but no attempt on service on that entity has been made in that case.)  For the Court's convenience, this motion is filed under the caption of both cases, and, as used herein, the term "Amended Complaint" refers to both the Amended Complaint filed as Dkt. 109 in Case No. 14-6008 (the "14-6008 Am. Compl.") and the Amended Complaint filed as Dkt. 31 in Case No. 14-6020 (the "14-6020 Am. Compl.").  The two pleadings are identical in all material respects.

[2] Florida Second Amended Complaint, *A & E Auto Body, Inc. v. 21st Century Centennial Ins. Co., No. 6:14-cv-00310-GAP-TBS* (M.D. Fla. Feb. 11, 2015) [Dkt. 296].

plausible claim for a violation of Section 1 of the Sherman Act under *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), because they allege no facts to support an inference that Defendants *agreed* to fix prices of automobile repair reimbursement rates or to boycott Plaintiffs.  Moreover, the Amended Complaint suffers from the same defective group pleading problem identified by this Court in the Florida SAC and all of the other complaints in this MDL.  Finally, the Amended Complaint fails to offer *any* allegations about certain Defendants on both the price-fixing and the boycott claims, which is a separate basis for dismissal of claims against those Defendants with literally no facts pled about them at all.

For these and other reasons, Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety with prejudice.

## FACTUAL BACKGROUND

Plaintiffs filed the initial complaints in the Pennsylvania Actions on October 31, 2014, alleging violations of Section 1 of the Sherman Act for price-fixing and a group boycott, as well as six Pennsylvania state law claims.  *See* Case No. 14-6008, Dkt. 1; Case No. 14-6020, Dkt. 1.  On June 3, 2015, Magistrate Judge Smith issued a 59–page Report & Recommendations with respect to 14 cases, originally filed by auto body repair shops located in 12 different states, all of which had pending motions to dismiss.  *In re Auto Body Shop Antitrust Litig.*, No. 6:14-CV-6006-ORL-31, 2015 WL 4887882 (M.D. Fla. June 3, 2015) ("June 3 R&R")).  In the June 3 R&R, Magistrate Judge Smith concluded that Plaintiffs' price-fixing and boycott claims, including those brought in the Pennsylvania Actions, were "indistinguishable from those asserted by the plaintiffs in [the First Amended Complaint in] *A & E Auto Body*" and recommended dismissal of those claims because "[t]he Court's

3

reasoning in dismissing the antitrust claims in that case [brought by auto body repair shops in Florida] applies with equal force here." *Id.* at *7. Magistrate Judge Smith also "recommend[ed] that all of the complaints [including in the Pennsylvania Actions] be dismissed without prejudice based upon improper group pleading." *Id.* at *6. This Court adopted these recommendations on August 17, 2015. *A & E Auto Body, Inc. v. 21st Century Centennial Ins. Co.*, No. 6:14-MD-2557-ORL-31, 2015 WL 4887690, at *14 (M.D. Fla. Aug. 17, 2015) ("Aug. 17 Order"); *see also* Case No. 14-6008, Dkt. 107; Case No. 14-6020, Dkt. 30.

Plaintiffs filed the Amended Complaint in both Pennsylvania Actions on September 19, 2015,[3] now alleging only claims for price-fixing and a group boycott under Section 1 of the Sherman Act.[4] Just like the Florida SAC, the Amended Complaint alleges in conclusory fashion that the Defendants have:

> engaged in an ongoing, concerted and combined intentional course of action and conduct to improperly and illegally control and depress automobile damage repair costs to the detriment of the Plaintiffs and the substantial profit of the Defendants.

Sept. 23 Order, 2015 WL 5604786, at *2 (quoting Florida SAC at 11). *Compare with* 14-6008 Am. Compl. ¶ 98 (same); 14-6020 Am. Compl. ¶ 20 (same).

---

[3] The Amended Complaint was filed on September 19, 2015, after expiration of the Court's September 18 deadline. *See* Endorsed Order, *In re Auto Body Shop Antitrust Litig.*, No. 6:14-md-2557 (M.D. Fla. Aug. 24, 2015) [Dkt. 228]. Certain Defendants have contemporaneously filed a motion to strike the Amended Complaint on this ground.

[4] Plaintiffs have now dropped from their Amended Complaint the few state law claims for breach of statutory obligations, quantum meruit, unjust enrichment, estoppel/quasi-estoppel, tortious interference with prospective or existing business relations, and conversion that were previously dismissed. *See* Aug. 17 Order, 2015 WL 4887690, at *5-6, 12 (dismissing state law claims).

In the exact same language as the Florida SAC, the Amended Complaint alleges that all the Defendants have supposedly:

> intentionally combined to utilize their aggregated market power to exert control over every aspect of the collision repair industry, including but not limited to price fixing of labor rates, price fixing of replacement parts, compulsory use of substandard or dangerous replacement parts, compulsory use of a parts procurement program which directly financially benefits State Farm Defendants and indirectly benefits the remaining Defendants, boycotting shops which refuse to comply with either fixed prices or use of substandard or improper parts, and interfering with Plaintiffs' current and prospective business relations by intentionally misrepresenting and making knowingly false statements regarding the quality, efficiency and ethical reputation of Plaintiffs' businesses, exerted economic duress and coercion upon both the Plaintiffs to capitulate and upon consumers, including direct threats to consumers to refuse coverage or portions of available coverage if consumers persist in their efforts to patronize Plaintiffs' businesses.

*Id.* (quoting Florida SAC at 11).  *Compare with* 14-6008 Am. Compl. ¶ 99 (same); 14-6020 Am. Compl. ¶ 21 (same).

## ARGUMENT[5]

**I.     Plaintiffs' Claims Under Section 1 Of The Sherman Act Are Identical To The Claims Dismissed In The Florida SAC.**

A comparison of the Amended Complaint and the Florida SAC shows that the counts of the complaints (for alleged price-fixing and a group boycott in violation of Section 1 of the Sherman Act) are essentially identical.  *Compare* 14-6008 Am. Compl. ¶¶ 537-69 *and* 14-6020 Am. Compl. ¶¶ 413-44, *with* Florida SAC ¶¶ 409-40.  In addition, the overwhelming majority of the factual allegations in the Amended Complaint are essentially the same as

---

[5] As this Court has already articulated the relevant legal standards for a motion to dismiss, Defendants incorporate by reference the legal standards on Rules 8 and 12 from this Court's Sept. 23 Order and January 21, 2015 order. *See* Sept. 23 Order, 2015 WL 5604786, at *1-2; *A & E Auto Body, Inc. v. 21st Century Centennial Ins. Co.*, No. 6-14-CV-2257-GAP-TBS, 2015 WL 304048, at *4 (M.D. Fla. Jan. 21, 2015) ("Jan. 21 Order").

those allegations in the Florida SAC.  The few additional allegations asserted by Plaintiffs do nothing to save the Amended Complaint from dismissal.

> ### A.   The Amended Complaint's Price-Fixing Claim Offers No Allegations Tending To Show Defendants Were Acting Against Self-Interest Or Any "Plus Factors" Supporting An Inference of Collusion.[6]

In the Sept. 23 Order, the Court dismissed the federal antitrust price-fixing claim in the Florida SAC with prejudice for failure to state a claim for relief.  *See* 2015 WL 5604786, at *3-6.  After summarizing the factual allegations of that claim,[7] the Court concluded that "[t]he alleged behavior of the Defendants—*i.e.,* paying the same rates, refusing to pay for the same list of procedures, requiring lower-quality parts—is not enough, on its own, to violate Section 1 of the Sherman Act."  *Id.* at *4.  The Court held:

> Evidence of conscious parallelism alone does not permit an inference of conspiracy unless the Plaintiff either (1) establishes that, assuming there is no conspiracy, each defendant engaging in the parallel action acted contrary to its economic self-interest or (2) offers other 'plus factors' tending to establish that the defendants were not engaging merely in oligopolistic price maintenance or price leadership but rather in a collusive agreement to fix prices or otherwise restrain trade.

---

[6] Defendants incorporate by reference the standards on which the Court relies in support of its dismissal of the claims under Section 1 of the Sherman Act in the Florida First Amended Complaint and the Florida SAC.  *See* Sept. 23 Order, 2015 WL 5604786, at *3-7; Jan. 21 Order, 2015 WL 304048, at *9-12.

[7] These factual allegations are essentially the same as those in the Amended Complaint, with a few exceptions addressed *infra*.  *Compare* Florida SAC at 29-32, 81, *with* 14-6008 Am. Compl. at 40-47, 91 *and* 14-6020 Am. Compl. at 26-34, 76-77.

*Id.* (citing *City of Tuscaloosa v. Harcros Chemicals, Inc.,* 158 F.3d 548, 570–71 (11th Cir. 1998)).[8]

The Court rejected Plaintiffs' allegation that "underpaying for repairs" was against a Defendant insurer's self-interest.  *Id.* at *4-5.  As the Court reasoned, this alleged action was *not* against a Defendant insurer's self-interest "for the *obvious* reason that paying as little as possible for repairs is *clearly in the self-interest* of automobile insurers, as it improves their bottom lines."  *Id.* at *5 (emphases added).

The Court also rejected Plaintiffs' allegations in the Florida SAC regarding the "(purported) plus factors" of market power, motive, opportunity to conspire, and uniformity of action.  *Id.* at *5-6.  Plaintiffs' allegations of market power were insufficient, because "the mere (collective) possession of market share is not suggestive of collusion."  *Id.* at *5. Plaintiffs' allegations of motive were equally unavailing, as "Defendants' desire to make a profit cannot constitute a 'plus factor,' because conscious parallelism is itself a profit-maximizing behavior."  *Id.*  Similarly, Plaintiffs' allegation that Defendants' membership in trade associations gave them an opportunity to conspire was insufficient because "a number of the Defendants are not members of any of the [trade] organizations [mentioned in the Florida SAC, and in any event] … participation in trade organizations 'provides no indication of conspiracy.'"  *Id.* (quoting *American Dental Association v. Cigna Corp.*, 605 F.3d 1283, 1295 (11th Cir. 2010)).  Finally, this Court rejected the Plaintiffs' allegations of "uniformity of action" as being sufficient to show collusion:

---

[8] Indeed, here, parallel action is not even alleged.  As described in further detail below in section I.C., many of the allegations are levied against differing subsets of the named Defendants, while some Defendants have no substantive allegations levied against them at all.

The Plaintiffs next point to their allegations that all of the Defendants pay the same labor rates for repairs, that the rates are not an accurate reflection of the rates prevailing in the market, and that they all refuse to pay for the same list of recommended procedures. The Plaintiffs contend that the odds against the Defendants all independently deciding to do these things are astronomical, thereby suggesting that they are the result of collusion. But the Plaintiffs do not allege that State Farm or any of the other Defendants try to keep their reimbursement rates or other details secret, or that they have any incentive for doing so. Given that this information would be possessed by every automobile repair shop in the state, it seems unlikely the Defendants could keep it secret even if they wished to do so. In the absence of plausible allegations that this information is not readily discoverable, this is merely parallel behavior, not indicative of collusion.

*Id.* at *6 (internal citations omitted).

Here, too, Plaintiffs do not allege the existence of any express agreement among Defendants.  Like the Florida SAC, the Amended Complaint merely alleges, at the very most, some "[e]vidence of conscious parallelism" by certain Defendants in "paying the same rates, refusing to pay for the same list of procedures, [and] requiring lower-quality parts."  *Id.* at *4. As this Court observed in dismissing the First Amended Complaint in Florida, "[i]t is not illegal for a party to decide it is unwilling to pay a higher hourly rate than its competitors have to pay, and the fact that a number of the Defendants made statements to that effect does not tip the scales toward illegality."  Jan. 21 Order, 2015 WL 304048, at *10.  Moreover, Plaintiffs fail to plead any facts that might "(1) establish[] that, assuming there is no conspiracy, each defendant engaging in the parallel action acted contrary to its economic self-interest or (2) offer[] other 'plus factors' tending to establish that the defendants were not engaging merely in oligopolistic price maintenance or price leadership but rather in a collusive agreement to fix prices or otherwise restrain trade."  Sept. 23 Order, 2015 WL 5604786, at *4.  In the Amended Complaint, Plaintiffs offer the same four "plus" factors of

market power,[9] motive,[10] opportunity to conspire,[11] and uniformity of action,[12] all of which were insufficient to state a claim under Section 1 of the Sherman Act in the Florida SAC for the reasons stated in this Court's well-reasoned Sept. 23 Order.  *See id.* at *4-6.

The few new factual allegations in the Amended Complaint do nothing to cross "the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  For example, Plaintiffs allege in conclusory and sweeping fashion that "Defendants have threatened Plaintiff shops and others that if they discuss labor rates with each other, they will be price fixing and breaking the law."  14-6008 Am. Compl. ¶ 257; 14-6020 Am. Compl. ¶ 178.  That Plaintiffs have been informed that it would be unlawful for them to collude on the setting of their labor rates is unremarkable and certainly does not support an inference of a conspiracy among insurers.

---

[9] *Compare* 14-6008 Am. Compl. ¶ 102 *and* 14-6020 Am. Compl. ¶ 24 ("the named Defendants hold over seventy-five percent (75%) of the private passenger auto insurance market in the market area of the State of Pennsylvania"), *with* Florida SAC ¶ 75 ("the named Defendants hold over ninety percent (90%) of the private passenger auto liability market in the market area of the State of Florida").

[10] *Compare* 14-6008 Am. Compl. ¶ 415 *and* 14-6020 Am. Compl. ¶ 343 ("Each of the Defendants has an obvious motive to agree, combine and conspire to fix prices, boycott and punish noncompliant shops and interfere with Plaintiffs' businesses at every possible level. Profit."), *with* Florida SAC ¶ 377 (same).

[11] *Compare* 14-6008 Am. Compl. ¶¶ 387-413 *and* 14-6020 Am. Compl. ¶¶ 315-41, *with* Florida SAC ¶¶ 352-76.  Like the Florida SAC, the Amended Complaint "overstates the Defendants' participation in these organizations; based on the allegations of the … Amended Complaint, a number of the Defendants are not members of any of the organizations."  Sept. 23 Order, 2015 WL 5604786, at *5. *See, e.g.*, 14-6008 Am. Compl. ¶ 390 (alleging that 12 of 68 defendants are members of National Association of Mutual Insurance Companies); 14-6020 Am. Compl. ¶ 318 (same).

[12] *Compare* 14-6008 Am. Compl. ¶ 544 *and* 14-6020 Am. Compl. ¶ 419 (alleging "uniformity of action in instances where Defendants should not have access to particular information," including labor rates), *with* Florida SAC ¶ 415 (same).

Plaintiffs' new allegations about the asset management company BlackRock are also insufficient to state a claim.  Under "Motive to Conspire," the Amended Complaint alleges that some Defendants[13] supposedly profit through their association with BlackRock, an asset management firm that allegedly invests in companies that supply certain automotive paints and parts.  *See* 14-6008 Am. Compl. ¶¶ 427-49; 14-6020 Am. Compl. ¶¶ 354-76.  But as the Court previously observed, because "desire to make a profit cannot constitute a 'plus factor,'" Sept. 23 Order, 2015 WL 5604786, at *5, any desire to profit from BlackRock is insufficient to support a price-fixing claim.

Plaintiffs also offer a flimsy additional allegation of a supposed "meeting" between insurers, but the allegation is so vague and conclusory that it cannot support a price-fixing claim, let alone provide fair notice to any of the 68 Defendants named in the Amended Complaint.  Specifically, Plaintiffs allege that "in Pennsylvania, a Progressive representative explained that body shops do not 'affect pricing,' the insurance companies get together to determine rates and new rates would probably be determined by a 'big meeting' scheduled for April, 2015." 14-6008 Am. Compl. ¶ 231; 14-6020 Am. Compl. ¶ 153.  Conspicuously absent from this allegation are any of the basic facts one would need to know to even start an investigation of such an allegation, let alone render it plausible to infer a massive industry-wide conspiracy spanning multiple years, such as: who attended this "meeting" (including whether any of the Defendants attended, as the allegation only describes "the insurance companies"); whether the "meeting" allegedly "scheduled for April, 2015" actually occurred

---

[13] More than half of the Defendants in the Amended Complaint are not even alleged to invest in or through BlackRock.  *See* 14-6008 Am. Compl. ¶¶ 427-501; 14-6020 Am. Compl. ¶¶ 354-78.

or not since the Amended Complaint was filed months later in September 2015; how

Plaintiffs know that insurance companies meet "to determine rates," as opposed to any

number of other subjects that companies can lawfully discuss in any industry; whether

attendees actually agreed to any "rates," as well as for which geographic locations and at

what levels, at the "meeting"; or what has happened in the six months since that "meeting"

was allegedly "scheduled" to occur.[14]   The same is equally true of Plaintiffs' even more

generalized allegation that "representatives of many named Defendants have … verbalized

the existence of *group meetings of Defendant insurers* wherein labor rates are illegal fixed

[sic] by the Defendant insurers."  14-6008 Am. Compl. ¶ 247 (emphasis added); *see also* 14-

6020 Am. Compl. ¶ 168.

In other words, "Defendants and the Court are left to guess whether any of the named

Defendants was a member of … [a price-fixing] cartel or attended any … alleged meeting[],

… where the alleged meeting[] took place, and/or the terms of the agreements reached and

whether any of the named Defendants actually accepted and/or adhered to these agreements."

*Animal Sci. Prods., Inc. v. China Nat. Metals & Minerals Imp. & Exp. Corp.*, 596 F. Supp.

2d 842, 878-79 (D.N.J. 2008) (granting motion to dismiss price-fixing claim under "even the

lenient Rule 8 pleading requirement" because of "[t]he vagueness of the allegations" that

were "limited to the date of a single meeting and a claim that one of the original cartels

---

[14] It is not even clear whether the allegation states that this supposed "meeting" occurred in Pennsylvania or whether a Progressive representative located in Pennsylvania was merely describing a meeting that might occur somewhere else. Thus, the allegation offers no details about any specific place or person involved in the alleged conspiracy. *See Twombly*, 550 U.S. at 565 n.10 (allegations that offered no details about the "specific time, place, or person involved in the alleged conspiracies" would be insufficient).

consisted of thirteen unidentified members").[15]   Such vague and conclusory allegations about alleged conspiratorial meetings are clearly insufficient to satisfy the "agreement" element necessary to state a price-fixing claim under Section 1 of the Sherman Act.

### B.   The Amended Complaint's Boycott Claim Offers No Allegation Tending To Show A *Concerted* Refusal To Deal With Plaintiffs.

The Amended Complaint's group boycott claim also fails under the Court's Sept. 23 Order.  In dismissing the Florida SAC, this Court rejected Plaintiffs' argument that they had sufficiently pled a group boycott claim based on additional allegations regarding a handful of individual incidents of "steering."  Specifically, the Plaintiffs in the Florida SAC "includ[ed] a number of examples of insureds being told by one of the Defendants that they could not or should not patronize one of the Plaintiffs' shops, generally because their insurance policy did not permit it or because the Plaintiff shop was likely to do a bad job."  Sept. 23 Order, 2015 WL 5604786, at *7.  This Court properly rejected those allegations as insufficient to state a *group* boycott claim and stated:

> Despite the inclusion of these additional allegations, the Second Amended Complaint also fails to state a boycott claim. Even accepting the allegations as true, they in no way suggest that the Defendants have engaged in a *concerted* refusal to deal. Each of the incidents involves a single Defendant discouraging one of its insureds from dealing with a single Plaintiff (or misleading the

---

[15] *See, e.g., In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (affirming motion to dismiss complaint with prejudice that made allegations, including of supposed "meetings," in "entirely general terms without any specification of any particular activities by any particular defendant"); *Cellco P'ship v. Hope*, No. CV11-0432 PHX DGC, 2012 WL 715309, at *3 (D. Ariz. Mar. 6, 2012) (denying motion to reconsider dismissal of boycott claim where Plaintiff's allegation about meetings between wireless carriers was "entirely conclusory and lacking in any detail about when and where these alleged meetings took place or what [one defendant] allegedly said or did to coerce parallel action against [plaintiff]"); *Bay Area Surgical Mgmt. v. Aetna Life Ins. Co.*, No. 5:15-cv-01416-BLF, 2015 WL 5821702, at ¶ III(A)(2)(a)(1) (N.D. Cal. Sept. 21, 2015) (granting motion to dismiss where "Defendant Insurers are large organizations, and Plaintiffs' bare allegation of a conspiracy would be essentially impossible to defend against").

> insured into refusing to do so); there are no allegations that at the time any of these steering incidents occurred, the other Defendants (or any of them) were also preventing their insureds from utilizing that particular Plaintiff's services. Just as important, the Plaintiffs never allege that any of these incidents had anything to do with price-fixing, as they do not allege that, at the time the steering occurred, the shop at issue was demanding higher rates or otherwise challenging the price-fixing scheme.

*Id.* (emphasis in original).

Here, the Amended Complaint similarly contains a handful of isolated, anecdotal allegations of steering "involv[ing] a single Defendant discouraging one of its insureds from dealing with a single Plaintiff (or misleading the insured into refusing to do so)…." *Id.* For example, Plaintiffs allege that "[d]espite a customer's request to have her car towed to Plaintiff Professionals body shop, State Farm informed her that they would not talk to or go to Professionals because they were not on the 'preferred' list." 14-6008 Am. Compl. ¶ 337; 14-6020 Am. Compl. ¶ 261. Even accepted as true, this allegation has nothing to do whatsoever with any of the non-State Farm Defendants and does not show a *concerted* refusal to deal by *all* Defendants.[16]

Equally unavailing is the allegation of a former Progressive employee that "Progressive employees did intentionally steer insureds and claimants way [sic] from Price's Collision Center" with no allegation of involvement of other defendants. 14-6008 Am. Compl., Ex. 7 ¶ 7; 14-6020 Am. Compl., Ex. 7 ¶ 7. Plaintiffs' citation to this affidavit from a

---

[16] The Amended Complaint does not even appear to link the steering allegations to the group boycott claim, instead apparently using them to support a tortious interference claim that Plaintiffs have chosen not to replead. *See* 14-6008 Am. Compl. ¶ 338 (summarizing steering allegations by noting that "[i]n each instance, a Defendant insurer directly intervened in the business relationship (commenced or intended) through false statements, misrepresentations, implications of unethical conduct by the Plaintiff or played upon the financial vulnerability of the consumer"); 14-6020 Am. Compl. ¶ 266 (same).

separate case not in this MDL, captioned *Price's Collision Ctr. v. Progressive Hawaii Ins. Co.*, No. 3:12-00873 (M.D. Tenn.), only confirms the isolated and unilateral nature of any alleged steering.   Notably, the Judicial Panel on Multidistrict Litigation declined to transfer *Price's Collision* to this MDL because:

> Unlike the actions in [this MDL], *Price does not allege an anticompetitive conspiracy* in the automobile insurance industry, assert wrongdoing by insurers acting in *concert* with Progressive, or involve common defendant State Farm. … *Price* is largely based on the theory that Progressive's alleged conduct arises from an *individualized* animus against plaintiff, in contrast to an industry-wide scheme or practice.

*In re Auto Body Shop Antitrust Litig.*, MDL 2557 (J.P.M.L. Feb. 6, 2015) [Dkt. 414 at 1] (emphases added).

Further, the Amended Complaint in the Pennsylvania Actions contains "no allegations that at the time any of these steering incidents occurred, the other Defendants (or any of them) were also preventing their insureds from utilizing that particular Plaintiff's services."  Sept. 23 Order, 2015 WL 5604786, at *7.  Tellingly, Plaintiffs no longer even allege that Defendants used "identical" methods to boycott Plaintiffs, as they did in the Florida SAC, instead downgrading Defendants to merely using "common" methods.[17]

Much like the Florida SAC, the Amended Complaint alleges that, after dissociating in 2012 from State Farm's DRP, certain Plaintiffs have seen varied reductions in their business from insureds of a few other Defendants.  *Compare* Florida SAC ¶¶ 311-51, *with* 14-6008 Am. Compl. ¶¶ 372-86; 14-6020 Am. Compl. ¶¶ 300-14.  Plaintiffs make this allegation

---

[17] *Compare* Florida SAC ¶ 350 ("Defendants actions were intentional, coordinated, relied upon shared information and utilized *identical* methods and content."), *with* 14-6008 Am. Compl. ¶ 385; 14-6020 Am. Compl. ¶ 313 ("Defendants' actions were intentional, coordinated, relied upon shared information and utilized *common* methods and content.") (emphases added).

presumably to support their contention that there was a "sudden onset of steering by insurers" and "sudden reductions in [Plaintiffs'] customer base" that somehow evidences an alleged boycott.  14-6008 Am. Compl. ¶¶ 370, 376; 14-6020 Am. Compl. ¶¶ 298, 304.  But Plaintiffs allege no facts to show that all Defendants *agreed* to steer customers away from any Plaintiff.[18]

Plaintiffs' boycott allegations are also internally inconsistent in a way that renders them implausible.  *See* Sept. 23 Order, 2015 WL 5604786, at *1 (observing that this Court had previously dismissed the original Florida Complaint based on group-pled allegations that "made no sense").  On the one hand, Plaintiffs allege that "the hard core steering used by the Defendants against the Plaintiffs appears to have commenced approximately ten years ago, continuing to the present day" and that a boycott is "ongoing."  14-6008 Am. Compl. ¶¶ 336, 566; 14-6020 Am. Compl. ¶¶ 259, 441.  On the other hand, Plaintiffs admit that they have received and continue to receive business from some Defendants.  *Cf.* Jan. 21 Order, 2015 WL 304048, at *12 n.14 (as the Court observed in dismissing the Florida First Amended Complaint, "[p]resumably, the boycott is not ongoing, as the Plaintiffs allege elsewhere … that the Defendants provide the bulk of the automobile insurance in the state and that seventy to ninety-five percent of the repairs done in the Plaintiffs' shops are paid for by insurance").  Here, too, Plaintiffs allege that Defendants provide the bulk of the automobile insurance in

---

[18] Moreover, some reduction in business from some Defendants over *a three-year period* (from 2012 to the present), without any allegation as to when that reduction started or when most of it occurred, cannot even support an inference that the claimed reduction was *sudden*.  *Cf. In re LTL Shipping Servs. Antitrust Litig.*, No. 1:08-MD-01895-WSD, 2009 WL 323219, at *11 (N.D. Ga. Jan. 28, 2009) ("time lags of three to six months between pricing moves 'refute rather than support' allegations of conspiracy") (citing *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 131-32 (3d Cir. 1999)).

Pennsylvania and presumably pay for most of the repairs by Plaintiffs.  14-6008 Am. Compl. ¶ 181; 14-6020 Am. Compl. ¶ 102.[19]

### C. The Price-Fixing And Boycott Claims Should Also Be Dismissed As To Defendants About Whom No Allegations Are Made.

While the Amended Complaint cannot survive a motion to dismiss as to any Defendants, a separate basis for dismissal is that the Amended Complaint offers no facts at all as to certain Defendants' alleged participation in a price-fixing and boycott scheme. *See* Sept. 23 Order, 2015 WL 5604786, at *10 n.8 ("not[ing] that the failure to include any allegations of tortious interference regarding 34 of the 39 Defendants is a separate basis for dismissal with prejudice of Count III as to those 34").  Under the header "Collusion by Defendants with State Farm," the Amended Complaint makes a handful of allegations about USAA, Allstate, GEICO, Progressive, and non-Defendants Louisiana Farm Bureau and Cincinnati Insurance (many of which, notably, describe alleged conduct *outside* Pennsylvania), but fails to allege any facts as to 45 *other* Defendants in this action.  *See* 14-6008 Am. Compl. ¶¶ 231, 238-44; 14-6020 Am. Compl. ¶¶ 153, 159-65.  Additionally, Plaintiffs' boycott allegations are based on alleged individual incidents of steering by State Farm, GEICO and Erie, as well as alleged reductions in business from Allstate, Harleysville and Erie following certain Plaintiffs leaving State Farm's DRP.  14-6008 Am. Compl. ¶¶

---

[19] The lack of uniformity in the decline of business from the few Defendants identified (with business declining from some Defendants as little as 40% and from others as much as 75%) also undermines any inference that such decline was the result of a concerted refusal to deal, as opposed to any number of legitimate reasons why an auto body repair shop might experience a decline in business.  14-6008 Am. Compl. ¶ 374; 14-6020 Am. Compl. ¶ 302.

337, 374; 14-6020 Am. Compl. ¶¶ 261-64, 302.  However, Plaintiffs have failed to plead *any*

facts as to the 49 other Defendants named in this action in support of their boycott claim.[20]

## II.   The Amended Complaint Should Also Be Dismissed For Pleading Defects That This Court Has Repeatedly Instructed Plaintiffs To Cure.

An independent basis for dismissal is that the Amended Complaint suffers from the

same pleading defects for which this Court has previously dismissed the complaints in this

and other cases in this MDL.  For instance, this Court previously dismissed the antitrust

claims in the original Pennsylvania complaint, and others, for impermissible group pleading.

June 3 R&R, 2015 WL 4887882, at \*6 (*adopted by* Aug. 17 Order, 2015 WL 4887690, at

\*14).[21]  Yet rather than cure this defect, Plaintiffs simply repeat – twelve times – the same

paragraph throughout the Amended Complaint alleging that "[a]llegations referencing

'Defendant insurers' or 'the Defendants' are intended to convey that each and every

defendant … engaged in the activity or conduct described below."[22]  Plaintiffs have been

warned repeatedly by this Court about group pleading, but persist in using this tactic.

---

[20] As many of the 68 named Defendants are not included in any substantive allegations, the Amended Complaint fails to allege even parallel conduct, much less any agreement or concerted action.  *See, e.g., In re Beef Indus. Antitrust Litig.*, 907 F.2d 510, 514 (5th Cir. 1990) ("When an antitrust plaintiff relies on circumstantial evidence of conscious parallelism to prove a § 1 claim, he must first demonstrate that the defendants' actions were parallel. The cattlemen have not done this.") (citations omitted); *Aviation Specialties, Inc. v. United Techs. Corp.*, 568 F.2d 1186, 1192 (5th Cir. 1978) (plaintiff "brought forth no evidence of parallel behavior suggesting an unlawful agreement").

[21] Indeed, courts have routinely dismissed antitrust conspiracy claims that improperly lump all defendants into the category of "defendants."  *See, e.g., In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 905 (6th Cir. 2009) (affirming dismissal of claim under Section 1 of the Sherman Act that merely alleged "indeterminate assertions" against all "defendants").

[22] 14-6008 Am. Compl. ¶¶ 193, 204, 222, 260, 296, 306, 330, 361, 372, 414, 502, 516; 14-6020 Am. Compl. ¶¶ 114, 125, 143, 182, 219, 229, 253, 289, 300, 342, 379, 393.

Plaintiffs not only impermissibly lump all Defendants together, but lump Defendants into "corporate families" throughout the Amended Complaint.  *See* 14-6008 Am. Compl. ¶¶ 80-92; *see also* 14-6020 Am. Compl. ¶¶ 13-14.  In its Sept. 23 Order, this Court also pointed out this defect, observing of an allegation regarding "Progressive" that "[i]t is not clear whether this is a reference to Defendant Progressive American Insurance Company or Defendant Progressive Select Insurance Company."  2015 WL 5604786, at *7 n.5.  Such lumping cannot provide fair notice as to Defendants' alleged wrongful conduct.  *See, e.g., Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*, No. 05-60080-CIV, 2011 WL 1233126, at *2 (S.D. Fla. Mar. 30, 2011) (granting motion to dismiss with prejudice where previously "the Court admonished the [Plaintiff] for improperly 'lumping' CGL, CFS–USA and CFS–Curacao together through the repeated use of the term 'Citco Defendants,'" but Plaintiff failed to cure these pleading deficiencies under Rule 8); *Brooks v. CSX Transp., Inc.*, No. 3:09-CV-379-J-32HTS, 2009 WL 3208708, at *3 (M.D. Fla. Sept. 29, 2009) (granting motion to dismiss where "Plaintiff treats two defendants-CSX Transportation Inc. and CSX Intermodal-as one, despite defendants' corporate disclosure statement which represents that 'CSX Transportation, Inc. and CSX Intermodal are wholly owned subsidiaries of CSX Corporation'"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) (granting motion to dismiss because Plaintiffs' "general allegations as to … a single corporate entity such as 'Hitachi' [are] insufficient to put specific defendants on notice of the claims against them"); *cf.* Sept. 23 Order, 2015 WL 5604786, at *10 n.8 ("not[ing] that the failure to include any allegations of tortious interference regarding 34 of

the 39 Defendants is a separate basis for dismissal with prejudice of Count III as to those 34").

### III.   The Amended Complaint Should Be Dismissed With Prejudice.

Plaintiffs should not be given another opportunity to re-plead and the Amended Complaint should be dismissed with prejudice.  As this Court observed in its Sept. 23 Order, "[b]ased upon a review of the pleadings in this and the other 20–odd cases—almost all of which share the same shortcomings—the Court finds that giving the Plaintiffs another opportunity to state a claim would be an exercise in futility."  2015 WL 5604786, at *12.[23] The same is true here.

As Defendants have explained above, and as was true in the Florida SAC, "[t]he problems identified in response to [Plaintiffs'] initial complaint—shotgun pleading, vagueness, and implausibility—have persisted in their subsequent efforts."  *Id.*  When Plaintiffs filed the Amended Complaint on September 19, 2015, Plaintiffs had the benefit of multiple rulings from this Court over the past year and a half about the basic pleading requirements Plaintiffs were obligated to meet, yet Plaintiffs have not heeded this Court's rulings.  The Amended Complaint has stretched to 118 pages (from 31 pages in the original complaint), but like the Florida SAC, "[d]espite becoming much wordier, the Plaintiffs' pleadings have not come remotely close to satisfying the minimum pleading requirements as

---

[23] *See also Ivanovic v. Overseas Mgmt. Co.*, No. 11-80726-CIV, 2011 WL 5508824, at *4 (S.D. Fla. Nov. 9, 2011) ("As Plaintiff fails to . . . satisfy basic federal pleading standards, the Amended Complaint must be dismissed as to all eight moving Defendants for failure to state a claim.  Such dismissal should be with prejudice because Plaintiff has already once been granted an opportunity to amend and it is apparent that any further amendment would be futile"); *Court Appointed Receiver of Lancer Offshore, Inc.*, 2011 WL 1233126, at *2 (dismissing complaint *with prejudice* where previously "the Court admonished the [Plaintiff] for improperly 'lumping'" defendants into single entity, but Plaintiff failed to cure pleading deficiencies under Rule 8).

to any of the claims asserted."[24]   *Id.*   Defendants should not have to answer yet another complaint in this MDL when Plaintiffs have shown that they are unable to state a plausible claim for relief against any Defendants under Section 1 of the Sherman Act.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Court grant the Defendants' motion to dismiss the Amended Complaint in its entirety with prejudice.

*/s/ Jeffery D. Ubersax*
Jeffery D. Ubersax
Joseph R. Coburn
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Telephone: (216) 586-7112
Fax: (216) 579-0212
jdubersax@jonesday.com
jcoburn@jonesday.com

James M. Jones
Anderson T. Bailey
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Telephone: (412) 391-3939
Fax: (412) 394-7959
jmjones@jonesday.com
atbailey@jonesday.com

*Counsel for Defendants*
*Erie Insurance Exchange and*
*Erie Insurance Company*

---

[24] In fact, Plaintiffs' pleadings have gotten worse.  For example, Plaintiffs appear to have accidentally copy-pasted sentences or whole paragraphs from their complaint in the Illinois case in this MDL, making allegations about price-fixing in Illinois even though this complaint concerns alleged conduct in Pennsylvania.  *Compare* 14-6008 Am. Compl. ¶¶ 94, 246, 247, 251, 381 *and* 14-6020 Am. Compl. ¶¶ 16, 167, 168, 172, 309, *with* Am. Compl., *Kallemeyn Collision Cntr., Inc., et al. v. 21st Cent. Centennial Ins. Co., et al.,* No. 6:14-cv-06011-GAP-TBS (M.D. Fla.), ¶¶ 107, 267, 268, 272, 415 [Dkt. 130].

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 9th day of October, 2015, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system which will send a Notice

of Electronic Filing to all counsel of record that are registered with the Court's CM/ECF

system.


*/s/ Anderson T. Bailey* _____